IN THE MATTER OF JAY MARK SACKMAN.

Argued October 5, 1981—Decided August 12, 1982.

*James A. Janowitz,* a member of the New York bar, argued the cause for appellant Jay Mark Sackman (*Clapp & Eisenberg,* attorneys; *James A. Janowitz* and *Donald S. Zakarin,* members of the New York bar, of counsel; *Stuart L. Pachman* on the briefs).

*Edwin H. Stern* argued the cause for respondents Supreme Court of New Jersey and Arthur J. Simpson, Jr., Acting Administrative Director of the Courts (*Colette A. Coolbaugh,* attorney; *Edwin H. Stern* and *Charles J. Hollenbeck,* of counsel and on the brief).

*Arthur Montano* argued the cause for intervenor New Jersey State Bar Association (*Montano, Summers, Mullen & Manuel,* attorneys).

*Leslie Ann Chen* submitted a letter brief on behalf of herself as an intervenor.

PER CURIAM.

This ethics case presents a challenge both to the constitutionality and the wisdom of part of *R.*1:21–1(a). The challenged portion requires out-of-state attorneys to maintain their princi-

pal office in New Jersey. Attorneys who live in New Jersey need only a "bona fide" office. We do not reach the constitutional question. Exercising our plenary power over the practice of law, we have decided that henceforth all licensed New Jersey attorneys shall be treated alike, whether they live here or not. The only requirement for both, in order to practice in New Jersey, shall be that they maintain a bona fide office here.

Petitioner, Jay Mark Sackman, is a resident of New York City and is licensed to practice law in New York and New Jersey. He is the sole proprietor of the law firm of Jay Mark Sackman, and maintains four offices for the practice of law: in New York City and Westbury, New York, and in Hackensack and Freehold, New Jersey. An appreciable portion of his practice is devoted to New Jersey clients, many of whom are participants in a prepaid legal services plan for which petitioner provides legal representation. The plan is available to employees for whom Local 1115 Joint Board is the collective bargaining representative.[1] Eligible members include residents of New York and New Jersey who work in one of the two states. In addition to members of this plan, Sackman represents some other New Jersey clients.

Mr. Sackman staffs his New Jersey offices with two attorneys licensed to practice law in New Jersey who are domiciliaries of this State. They provide the majority of the services in the New Jersey offices. The work is reviewed by petitioner, who performs most of his administrative and supervisory work in his New York City office. He spends at least one day a week in his New Jersey offices and his Long Island office,[2] and estimates

---

[1] Local 1115 Joint Board is an autonomous union that represents cu'inary service and nursing home workers. It is not affiliated with any national labor organization.

[2] It is unclear from this uncontested statement by plaintiff of his work allocation whether, in total, he spends one day a week divided in some fashion among these three offices or one day apiece at each of these offices. In the context of other information about Sackman's practice, the former interpretation is more likely correct.

that he devotes approximately 25 percent of his total time to clients who either live or work in New Jersey.

On November 28, 1978, Sackman received a letter from the New Jersey Board of Bar Examiners reminding him that as a non-domiciliary of New Jersey, he was not eligible to practice law in New Jersey and could be disbarred under R.1:21-1(a) if one of his New Jersey offices was not his principal office. This was followed by a more expansive letter of inquiry into Sackman's multi-state practice from the Division of Ethics and Professional Services. Petitioner filed an action against the New Jersey Supreme Court and the Administrative Director of the Courts in Superior Court, Chancery Division, Bergen County, on March 20, 1979, challenging the constitutionality of the rule. He alleged that the rule violates the Privileges and Immunities Clause, Art. IV, § 2; the Commerce Clause, Art. I, § 8, cl. 3; and the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution.

Under an agreement between the parties by which a record was established for review, the constitutional issues were placed directly before this Court. The petitioner executed an affidavit in which he set forth an account of the facts relevant to the controversy; the Attorney General did not contest them. This Court granted petition to review the validity of R.1:21-1(a) on June 10, 1981. 91 N.J. 236 (1981). On September 2, 1981, Leslie Ann Chen, temporarily licensed to practice law in New Jersey, was granted permission to intervene in the matter.[3]

---

[3]Under the rule operating at the time Ms. Chen intervened in this case, applicants for admission to the New Jersey bar were required to be domiciled in the State or to certify their intention, if they passed the examination, to establish their domicile or principal office in the State. R.1:14-2(d) (deleted Sept. 21, 1981). Applicants who qualified for admission to the bar except for failure to be domiciled in New Jersey at the time application was filed were granted temporary licenses valid for thirty days. R.1:27-1(d) (caption amended and paragraph (d) deleted Sept. 21, 1981). By the end of that period the applicant either had to submit evidence that he or she was a domiciliary of

Under rules that have since been revised, Ms. Chen had sought full admission to the New Jersey bar despite her inability to comply with the domicile or principal office requirements of *R.* 1:21–1(a).

The challenged rule was adopted by this Court pursuant to its power to promulgate rules for admission to the New Jersey bar. *N.J.Const.* (1947), Art. VI, § II, par. 3. The rule provides in part:

(a) Qualifications. No person shall practice law in this State unless he is an attorney, holding a plenary license to practice in this State, is in good standing, and is either domiciled and maintains a bona fide office for the practice of law in this State or, if not domiciled in this State, maintains in this State his principal office for the practice of law ...

For the purpose of this section, a bona fide office is a place where the attorney or a responsible person acting on his behalf can be reached in person and by telephone during normal business hours. A bona fide office is more than a maildrop, a summer home which is unattended during a substantial portion of the year, or an answering service unrelated to a place where business is conducted. [*R.*1:21–1(a)].

It thus establishes a more stringent requirement for non-domiciliaries practicing in New Jersey than for domiciliaries. Petitioner, a non-domiciliary, does not satisfy the rule: his principal office is in New York.

The rule has been amended several times and has been the subject of much debate. It represents the continuing effort to determine where the public interest lies when non-domiciliaries seek to practice law. If such practice poses a risk to the public, nowhere is it greater than in New Jersey. Located between two large states that are major commercial and industrial centers,

---

the State or certify his or her intention to establish domicile or a principal office in the State. *Id.*

*R.*1:27–1(d) was amended on September 21, 1981, and temporary licenses were eliminated. Ms. Chen was advised of this fact and was granted a permanent license in a letter from the State Board of Bar Examiners on September 23, 1981. Consequently, she is a non-domiciliary attorney fully licensed to practice here but without a principal office in this State. She is thus in the same position as Mr. Sackman and is identically affected by our result.

with New York City and Philadelphia directly on our borders, New Jersey is a natural place to practice for many residents of New York and Pennsylvania. Similarly, many New Jersey domiciliaries practice in those states.

For many years, New Jersey had required all attorneys who practiced here to be domiciliaries of the State. *See R.R.* 1:12–1(a) (Revision of 1959). In 1960, this Court embarked on a general review of the rules of court by appointing the Supreme Court Coordinating Committee on the Revision of the Rules of Court that led to the *Proposed Revision of the Rules Governing the Courts of the State of New Jersey* III (November 1966). The *Proposed Revision* addressed .the problem that *R.R.* 1:12–1(a) created for lawyers who maintained their practices in New Jersey but wished to live in a neighboring state. *Id.* at 74. The Committee proposed a rule that required either domicile or "regular attendance at an office in this State" as a means of permitting practicing New Jersey attorneys to live elsewhere while preventing occasional practice by those who practiced primarily in another state and thereby, according to the Committee, lacked "familiarity with [New Jersey] law and its developments." *Id.* The Committee suggested that the "regular attendance rule might be substituted altogether for the domicile requirement, as mere domicile would not prevent occasional practice by a domiciliary attorney who practiced regularly in another state." *Id.*

The "regular attendance" proposal provoked considerable criticism. Pressler, *Rules Governing the Courts of the State of New Jersey* 87 (1969) (hereafter Pressler, *1969 Court Rules* ). It was perceived as ambiguous, open to an interpretation that would allow attorneys who regularly practiced in New York or Philadelphia to meet the requirement merely by, for example, attending a New Jersey office once a week. 90 *N.J.L.J.* 164 (1967). *See also* Pressler, *1969 Court Rules* 87. An editorial in the *New Jersey Law Journal* suggested that the proposed rule could have an adverse impact on the economic interests of the New Jersey bar as well as implicating the "general public

interest in securing qualified and committed counsel." 90 *N.J. L.J.* 164 (1967).

Subsequently, pursuant to a Committee recommendation, the Court revised the rule to require either domicile or maintenance of a principal office as a condition to practicing law in this State, *R.*1:21–1 (1969), thus "reject[ing the] implicit approval of a multi-state practice . . . . " Pressler, *1969 Court Rules* at 87. The rule was again amended in 1978 to require a domiciliary to maintain a bona fide office in this State. Pressler, *Current N.J. Court Rules*, Comment *R.*1:21–1 (1982). The additional requirement was seen as a means of controlling the occasional practice of law by domiciliaries who primarily practiced in other jurisdictions or who practiced law only sporadically in New Jersey. *Id.*

"Bona fide office" was not initially defined, a failure that led to another amendment in September 1981, upon the recommendation of the Committee to Evaluate Bar Admission Requirements, chaired by former Justice Nathan L. Jacobs (Jacobs Committee).[4]  The definition states:

> For the purpose of this section, a bona fide office is a place where the attorney or a responsible person acting on his behalf can be reached in person and by telephone during normal business hours. A bona fide office is more than a maildrop, a summer home which is unattended during a substantial portion of the year, or an answering service unrelated to a place where business is conducted. [*R.*1:21–1(a) ].

The "domicile/bona fide office," "non-domicile/principal office" distinction was maintained. In its commentary accompanying the suggested revision, the Jacobs Committee recommended retention of the "principal office" requirement as a "reasonable means to ensure that attorneys practicing in New Jersey remain accountable to authorities in this State, and readily accessible to opposing counsel and to their clients. The rules also tend to ensure that attorneys who practice in New Jersey are familiar

---

[4]The amendment was adopted while this action was pending. It resulted not from this action but from a study of the entire subject of bar admissions that the Jacobs Committee undertook at the Court's direction. *See Report of the Committee to Evaluate Bar Admission Requirements* (July 1981).

with local custom as well as recent developments in local law." Jacobs Committee *Interim Report*, 108 *N.J.L.J.Supp.* 11 (1981). Although the Committee considered recommending modification of "principal office" to "substantial office," it declined to do so as the latter "could be interpreted as a place where an attorney spends as little as several days a month." *Id.* It similarly declined to define "principal office," stating that precise standards could result in arbitrary determinations, but suggested that the "principal office" requirement was met "so long as [an attorney's] practice in New Jersey is not subordinated to his [or her] practice in another state." *Id.*[5]

We need not address the various contentions made by petitioner in his challenge to *R.*1:21–1(a)[6] because we have

_____

[5]The overall impact of the Jacobs Committee recommendations was to encourage multi-state practice. It would, for example, have allowed admission on motion for out-of-state lawyers who had practiced for five years in another jurisdiction. *Report of the Committee to Evaluate Bar Admission Requirements*, 108 *N.J.L.J.* 269, 291 (Sept. 24, 1981).

[6]As his central challenge to *R.*1:21–1(a), petitioner asserts that the rule violates the Privileges and Immunities Clause of the United States Constitution. To be protected by the clause, a non-domiciliary must be engaged in or want to engage in an activity that is "fundamental" to the " 'development of a single union' (citations omitted)." *In re Professional Ethics Advisory Comm. Op. 475*, 89 *N.J.* 74, 93 (1982). If an activity is deemed fundamental, then the State must prove that non-residents are "a peculiar source of the evil at which the statute is aimed," and must establish that the differential treatment of non-residents is substantially related to the evil intended to be eradicated. *Hicklin v. Orbeck*, 437 *U.S.* 518, 525–26, 98 *S.Ct.* 2482, 2487–88, 57 *L.Ed.*2d 397, 404 (1978); *Toomer v. Witsell*, 334 *U.S.* 385, 398, 68 *S.Ct.* 1156, 1162, 92 *L.Ed.* 1460, 1472 (1948); *Rubin v. Glaser*, 83 *N.J.* 299, 305 (1980); *Salorio v. Glaser*, 82 *N.J.* 482, 503 (1980). The means chosen to alleviate the harm must be closely tailored to the goal sought to be achieved. *Hicklin v. Orbeck*, 334 *U.S.* at 528, 98 *S.Ct.* at 2488, 57 *L.Ed.*2d at 406; *Salorio v. Glaser*, 82 *N.J.* at 503. If, for instance, their activities within the State give rise to additional expenses, non-residents may be asked to bear them. *Salorio v. Glaser*, 82 *N.J.* at 503.

The State advances several reasons in support of the differential treatment accorded by *R.* 1:21–1(a). As an overarching concept, the State argues that non-domiciliary attorneys differ qualitatively from domiciliary attorneys or

decided, as a matter of policy to amend the rule so as to remove the distinction between domiciliaries and non-domiciliaries. Thus amended, the rule permits petitioner to practice in New Jersey and renders the case moot.[7]

---

non-domiciliary attorneys whose principal offices are in New Jersey because non-domiciliary attorneys without such officers will have less frequent and less in-depth contact with this State, its laws and its judicial system. Such attorneys, the State claims, are likely to be less accountable to State authorities, less accessible to their clients and opposing clients' counsel, and less familiar with developments in local law and with local custom and procedures. They will have a minimal stake in the community, and therefore less concern with their local reputation. Because of their irregular presence in the State, they will not be subject to "informal community sanctions" that may be an effective deterrent to unethical behavior. And because they are not domiciliaries and, by definition, their New Jersey practice is subordinate to their practice elsewhere, such attorneys are likely to be less available for a host of procedures related to the practice of law: service of process; client conferences; motion calls and case conferences; bar disciplinary procedures, and, if necessary, malpractice investigations.

We decline to decide whether the practice of law is the sort of fundamental activity contemplated by the Privileges and Immunities Clause in *In re Professional Ethics Advisory Comm. Op. 475*, 89 *N.J.* at 93. *Gordon v. Committee on Character & Fitness*, 48 *N.Y.2d* 266, 422 *N.Y.S.2d* 641, 397 *N.E.2d* 1309 (1979), and *Sheley v. Alaska Bar Ass'n*, 620 *P.2d* 640 (Alaska 1980), held that it was. The United States Supreme Court has not directly addressed the issue. *See, e.g., Hicklin v. Orbeck*, 437 *U.S* at 524, 98 *S.Ct.* at 2486, 57 *L.Ed.2d* at 404; *Baldwin v. Fish & Game Comm'n of Montana*, 436 *U.S.* 371, 386, 388, 98 *S.Ct.* 1852, 1862, 56 *L.Ed.2d* 354, 367, 368 (1978); *Toomer v. Witsell, supra*, 334 *U.S.* at 396, 68 *S.Ct.* at 1162, 92 *L.Ed.* at 1471. Petitioner also claims that the rule constitutes an unreasonable burden on interstate commerce, in violation of Art. I, § 8 of the United States Constitution; that it creates an arbitrary distinction between domiciliaries and non-domiciliaries which lacks a rational basis and that it burdens his right to travel in violation of the equal protection guarantees of the Fourteenth Amendment of the United States Constitution; and that it creates an irrebutable presumption that non-domiciliaries will be less familiar with New Jersey law than domiciliaries, and establishes a standard so vague and indefinite as to violate the Due Process Clause of the Fourteenth Amendment to the United State Constitution.

[7]We impose but one distinction, which is that in the future all non-domiciliary attorneys must designate the Clerk of the Supreme Court as his or her agent upon whom service of process can be made for all actions, including

■ We have concluded that the public would be better served if licensed New Jersey attorneys residing, for example, in New York and Philadelphia were subject to no greater restrictions in their practice in New Jersey than those residing in Newark and Camden. The risks, if any, to the public arising from the potential lack of contact of non-domiciliary attorneys with New Jersey are not significantly greater than the same risks that arise when licensed New Jersey attorneys, living in Newark or Camden, practice almost exclusively in New York City or Philadelphia. In any event, the difference in risk is substantially outweighed by the advantage to the public of allowing such out-of-state attorneys to practice here.

What is the public interest here? It is to make more qualified lawyers available to New Jersey's citizens. That interest is achieved by eliminating restrictions that reason and experience have shown are not needed for the public's protection.

No one before us has suggested that the public interest would be served by a limitation on the number of lawyers authorized to practice in New Jersey. Whether the financial interest of the bar would be served by any such limitation is irrelevant unless and until that financial interest can be equated with the public interest, which we doubt it ever could. We assume, and believe, that the more qualified lawyers in New Jersey, the better the public will be served; that potential clients of all income levels will benefit from more lawyers being available; that the increase in competition may have the beneficial effect of lowering fees; that if any risks to the public interest are caused by such increased competition, they can be controlled by this Court; and that the adverse economic impact, if any, on lawyers now practicing in New Jersey is no more relevant to the issue before us than it is to the number of new attorneys admitted as a result of each new bar examination. The New Jersey State Bar

---

disciplinary actions, arising out of the practice of law or his or her activities related thereto. A suitable form will be available at the Clerk's office.

Association has not suggested any contrary contention. If experience proves that our judgment is wrong on any of these matters we can, and will, revise the rule accordingly.

The premise of the present rule is that the out-of-state residency of a lawyer means that he is not qualified to practice law here unless his principal office is located here. This premise supposes that without the principal office requirement, an attorney's contacts with New Jersey *may* be so insignificant that he will lose that contact with New Jersey law and procedure needed to serve clients with competence, or that he may be either inaccessible or unaccountable both to clients and to the authorities.

Several things may be immediately observed. But for their non-residence, the out-of-state lawyers are just as qualified as their New Jersey counterparts, since both have passed the New Jersey bar examination and all other tests necessary to obtain a New Jersey license.

Second, no requirements in New Jersey today assure that a New Jersey domiciliary has kept informed about New Jersey law and procedure. Nor is there any solid reason to believe that New Jersey residents are more accessible to clients than non-residents if both are required to have a responsible person and a telephone at their office, as the current definition of a bona fide office requires. New Jersey residency does make it easier to serve process on attorneys, to notify them of proceedings, and to bring them within the jurisdiction of the court. This difference can easily be remedied, however, by requiring non-residents to authorize some person within the State to accept service on their behalf.

Residents and non-residents may differ to some degree in competence, accessibility, and accountability. That is to say, a statistical evaluation may show that today the percentage of New Jersey domiciliaries practicing out of state but maintaining a "bona fide" office within the state who are either incompetent or inaccessible is lower than the similar percentage applied to

out-of-state attorneys practicing here, even with the "principal office" requirement in existence. There is no proof, however, of that fact nor any proof to suggest that equating the two requirements (so that both would require only a bona fide office) would result in a significant or even measureable difference.

Third, if every state in the nation imposed the same requirements that we have in New Jersey, no lawyer in this country could practice in more than two states, the state of his residence and, if he has his principal office elsewhere, that state; and practically every attorney in this country would be limited to practicing in but one state, since we assume that practically the overwhelming majority of attorneys have their principal office in the state where they live. Given the dramatic increase in interstate travel and the corresponding increase in interstate law practice and its uniformity, such a national pattern of restriction would be a national disgrace.[8] The only

---

[8]While some states require bar applicants to reside in that state at the time application to the bar is made, or to maintain an office within the state, the requirement of continuing residence or maintenance of a principal office is not common. Idaho requires a bar applicant to reside in the state or declare an intent to become a resident prior to the bar examination and to practice in the state; Indiana requires a declaration of intent to maintain *an* office in the state and an intent to practice in the state within two years of passing the bar examination; Minnesota and South Dakota require residence prior to admission or maintenance of an office in the state or designation of the Clerk of the State Supreme Court as agent for service of process for all purposes; Pennsylvania requires an applicant to be a resident or to intend to maintain an office in the state. Some jurisdictions have no residence requirement for applicants at the time of application for admission to the bar: Arizona, California, District of Columbia, Florida, Georgia, Illinois, Indiana, Louisiana, Maine, Maryland, Massachusetts, Michigan, New York, North Dakota, Ohio, Vermont, Wisconsin. Others require a specific period of residence *before* examination or admission but do not specify ongoing post-admission residence requirements: Alabama, Alaska, Arkansas, Colorado, Hawaii, Montana, Nevada, New Mexico, North Carolina, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, West Virginia, Wyoming. *See,* American Bar Association, Section of Legal Education and Admissions to the Bar, Bar Admissions Committee, *Draft Survey of State Residence Requirements for Bar Applicants* (1982) (in conducting the survey, the Bar Admissions Committee collected information supplied to it by the states: it does not endorse any

conceivable justification for imposing such restrictions in New Jersey is the greater likelihood of non-residents practicing here because of the large number of attorneys found near our borders in neighboring states. The risks here, in other words, if there are any from out-of-state attorneys, may be substantial. We believe that the proper response is not the kind of rule that if applied elsewhere would stifle the interstate movement of attorneys, but rather the tailoring of a rule allowing interstate movement while at the same time assuring a sufficient degree of competence, accessibility and accountability.

We have no doubt that non-residents required to have their principal office in New Jersey are more likely to be competent, accessible and accountable than one not so required; and similarly, no doubt that New Jersey domiciliaries required to have *their* principal office in New Jersey (while practicing perhaps in Philadelphia or New York as well) would be more likely to be competent, accessible and accountable than if all that was required was a "bona fide" office. Nevertheless we allow the latter to practice in New Jersey with just a bona fide office while the former must have his principal office here. The premise behind the distinction is that the mere fact of *living* in New Jersey makes it more likely, and more to the point, sufficiently more likely, that that lawyer will be more competent, accessible and accountable than the one who is living in another state. If it is true, then it is only marginally true. We do not know whether the lawyer in Camden or Philadelphia reads the New Jersey Law Journal, the advance sheets, or goes to continuing legal education courses. We do not know which one regularly responds to telephone calls, and which will respond to calls at home. We do not know which one comes to the

---

particular set of requirements nor can it vouch for the continuing accuracy of the information, as rules for admission to the bar are subject to change by the states at any time). *See also* Note, "The Future of State Bar Residence Requirements Under the Privileges and Immunities Clause," 26 *S.D.L.Rev.* 80, 80 n. 4 (1981).

office, whether principal, bona fide or any office, regularly, and works hard. We know that some New Jersey lawyers are not up to date on New Jersey law and procedure, that some handle cases in areas for which they are ill-equipped, that some have more than one office in New Jersey and cannot be found when needed; in short, we know that all of the problems attributed to non-residents that might require them to have a principal office in New Jersey may be caused also by New Jersey attorneys. The differential in risk to clients concerning the competence, accessibility and accountability of the out-of-state lawyers as compared to the New Jersey resident seems to us insufficient to warrant a difference in these requirements.

While our experience with out-of-state attorneys cannot prove very much, since the rule has always required at least a principal office here, we note that complaints of incompetence, inaccessibility or unaccountability made of out-of-state attorneys appear to have no more frequency in relation to their total number than those against domiciliaries. There is absolutely no showing that New Jersey domiciliaries who have their principal office elsewhere, indeed almost their exclusive office elsewhere, are less competent, accessible or accountable when they practice in New Jersey at their "bona fide" office than are other New Jersey lawyers. And finally, though many states in the Union allow non-domiciliaries to practice without any "principal office" requirement, there is absolutely no literature, no statistical proof of which we are aware, not even a suggestion, that they constitute any risk to the public greater than that which emanates from the resident bar.

The record is thus barren of proof of the difference in risk. Our own knowledge and experience suggest that while residence may be a factor bearing on competence, accessibility and accountability, it is not an important factor, and that relying on it may cause more disadvantages to the public than advantages. We conclude, therefore, that the requirements for practicing in New Jersey should be the same for all who are licensed New Jersey attorneys whether resident or non-resident, and effective

today our rules have been amended to that effect. Both shall be required to maintain a bona fide office as presently defined in *R.* 1:21–1(a).

Given the number of years that the distinction has persisted, and its apparent basis in a belief that a lawyer's contacts with New Jersey affect his qualifications, we believe that it would be desirable to examine this aspect of the subject further. A committee sensitive to the need for access to legal services, to the implications of increased competition, and to the necessity for an acceptable level of competence, accessibility and account-ability on the part of anyone who is authorized to practice in New Jersey should be asked to look into this matter. The committee recently constituted to examine the question of firm names, the desirability of the continuation of our ban on televi-sion advertising by lawyers (*In re Professional Ethics Advisory Comm. Op. 475*, 89 *N.J.* 74 (1982)), and the sufficiency of our regulation of advertising in general, is most suitable for this purpose. We are therefore requesting that committee to deter-mine whether any requirements, in addition to those contained in the present definition of a bona fide office, should be imposed on resident and non-resident lawyers alike, and whether any special requirement should be imposed on lawyers who have multiple offices. In connection with its work on this matter, that committee should consult with the Advisory Committee on Bar Admissions, whose comments shall accompany the commit-tee's report.

We do not foreclose the committee from suggesting modifica-tions of the definition of bona fide office so as, for example, to impose requirements as to the use of the office, its size, the extent to which it is directly accessible to the public (and to public services such as mail, etc.), the proportion of the attor-ney's New Jersey legal work that is done there, whether the "responsible person" should be an employee, whether there should be an undertaking to make reimbursement for expenses incurred in communicating with and obtaining jurisdiction over an attorney, whether specific obligations should be imposed for

notifying clients of the existence of multiple offices and of the attorney's availability there: all of these may be subject to the committee's inquiry. Nor are we suggesting the desirability of any changes implicit in the range of matters mentioned. We simply want to be satisfied that the rule as we have now amended it is the best that can be designed to serve the public's interest in obtaining competent legal services at affordable prices from lawyers who are both accessible and accountable.

The inappropriateness of the differential treatment accorded domiciliary and non-domiciliary attorneys by R.1:21–1(a) is best illustrated by the case before us. Jay Mark Sackman maintains, in addition to his New York offices, two offices in New Jersey in which fully qualified New Jersey attorneys are present full-time. He reviews their work and maintains regular contact with those offices. He can be reached by clients, by counsel, judges, or other public officials at or through his New Jersey offices or his nearby New York offices. No one has suggested that Mr. Sackman is less competent in his knowledge of New Jersey law, practice and procedure than lawyers who are New Jersey domiciliaries. In short, the concern that non-domiciliary attorneys will present problems of accountability, accessibility or familiarity with local law is in no way supported by the facts in Mr. Sackman's case. To bar a New Jersey licensed attorney from practicing law here under these circumstances obviously disserves the public interest, to say nothing of the interest of those clients who want him as their attorney; and there is no countervailing interest served by such prohibition. There may be many licensed lawyers residing out of state so situated. All should be allowed to practice here.

■ Jay Mark Sackman is thus no longer subject to discipline for failing to have his principal office in New Jersey. He will, however, be required to meet the same requirements applicable to licensed New Jersey lawyers who live here.

The amendment of *R.* 1:21–1(a) having rendered this matter moot, the Petition is dismissed.

*For dismissal*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, HANDLER, POLLOCK and O'HERN—6.

*Opposed*—none.