638 A.2d 155

SUSAN LOPEZ, PLAINTIFF–RESPONDENT, v. JOHN L. PITULA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1993—Decided March 2, 1994.

Before Judges BRODY, STERN and KEEFE.

No appearance for appellant at oral argument (*John L. Pitula, pro se,* on the brief).

*Douglas J. Kinz* argued the cause for respondent.

The opinion of the court was delivered by

STERN, J.A.D.

This is an appeal by defendant, a New York attorney, from an order of the Law Division confirming an award by a District Fee Arbitration Committee in favor of plaintiff. The issue before us relates to the jurisdiction of the District Fee Arbitration Committee to consider the matter.

Defendant declined to participate in the fee arbitration proceeding except to challenge its jurisdiction. The underlying facts, as advanced by plaintiff, were essentially accepted by the Committee panel in its findings:

> On or about August 28, 1988, the client, Susan Lopez, contacted Albert R. Arezzi, a licensed private investigator in the State of New Jersey, whose address is 857 Hillsdale Avenue, Hillsdale, New Jersey, and was a former special agent of the U.S. Department of Justice, Immigration and Naturalization Service, in connection with certain criminal proceedings that she expected to be brought against her arising from an alleged fraudulent agricultural worker permits supposedly, either manufactured or distributed by Ms. Lopez.

Ms. Lopez had previously known Mr. Pitula in connection with another matter, and had sought out Mr. Arezzi's help. John L. Pitula was a New York attorney who had formerly been associated with the U.S. Attorney's office, and particularly involved with the Department of Immigration & Naturalization.

Mr. Arezzi notified Mr. Pitula on August 28 concerning the case, and had a conversation with Mr. Pitula and Mr. Pitula said he would take the case.

A meeting was arranged between Mr. Arezzi, Mr. Pitula and Susan Lopez, which was held on August 29, 1988, at 149 Boulevard, Passaic, New Jersey, which was the residence of Ms. Lopez.

At said meeting a discussion was held concerning the case, and Mr. Pitula stated that he would have to consult with New Jersey attorneys because if any criminal proceedings were instituted, they would most probably be in New Jersey.

Mr. Pitula contacted Dennis S. Carey, Esquire, who at that time was partners with Neil G. Duffy, III, Esquire, with offices in West Orange, New Jersey, and were practicing under the name of Carey & Duffy.

On August 31, 1988, there was a meeting held at the office of Carey & Duffy in West Orange, New Jersey, where the case was discussed, and Ms. Lopez was informed that the fee for the representation in the entire matter would be $600,000.00.

On September 1, 1988, Mr. Arezzi had been given the sum of $200,000.00 in cash, which he delivered to Mr. Pitula on September 1, 1988, at the parking lot of the Holiday Inn in Fort Lee, New Jersey. At said time, Mr. Arezzi was given $20,000.00 by Mr. Pitula for the services that he would be rendering as an investigator.

Thereafter, and prior to September 9, 1988, Mr. Pitula did deliver to Messrs. Carey & Duffy the sum of $90,000.00, which represented one-half of the remainder of the $200,000.00 retainer.

Mr. Pitula kept $90,000.00 for himself.

On Friday, September 9, 1988, there was another discussion concerning the handling of the case, and one week later, to wit, on September 16, 1988, Mr. Arezzi notified Mr. Pitula and Messrs. Carey & Duffy that Susan Lopez was not happy with the representation, and that she wanted the return of her monies.

A further meeting was held on October 4, 1988, in an effort to settle the dispute between the client and the attorneys, and at that time no money was refunded to the client. Thereafter, Ms. Lopez engaged the services of another New York firm, which was later relieved, and was finally represented by a New Jersey attorney in connection with the indictment that was issued out of the United States District Court for the District of New Jersey.

The panel finds that all of the contacts with Mr. Pitula concerning the representation, the delivery of money, the handling of the case, were done within the State of New Jersey. The panel further finds that the retainer that was paid was for the

representation of the client in legal matters that arose in and had to be disposed of within the State of New Jersey.

## Based on those findings, the Committee concluded

that there were sufficient contacts with the State of New Jersey, in that all of the legal services were to be rendered in New Jersey, thereby rendering the said John L. Pitula, Esquire, subject to the rules governing the representation of attorneys and subject to the rules governing fee arbitration matters, to wit, Rule 1:20A–1 et seq.

At the time of the hearing as stated above, the New Jersey attorneys, Neil G. Duffy, III and Dennis S. Carey, entered into a Stipulation of Settlement, and the hearing proceeded against the absent John L. Pitula, Esquire.

The panel has decided that John L. Pitula, Esquire, for all intents and purposes was acting as an attorney in the State of New Jersey.

The panel is satisfied that he did receive the sum of $90,000.00 as a retainer for the work that he was to do with the firm of Carey & Duffy, particularly because of his expertise and knowledge of the Immigration & Naturalization Laws of the United States, which would have been of peculiar interest to, and assistance to the New Jersey attorneys.

The panel further finds that within sixteen (16) days from the date of the payment of the retainer, that the plaintiff became dissatisfied with the services being rendered, and notified the attorneys that they were not to represent her any more.

The panel further finds that the said John L. Pitula did not perform any services for which he was entitled to a fee.

The panel further finds that the client, Susan Lopez, is entitled to a return of the $90,000.00 that had been retained by Mr. Pitula.

Defendant was ordered to repay the $90,000 and was advised that a judgment may be entered "in accordance with R. 1:20–3."

Defendant appealed to the Disciplinary Review Board (DRB) which "affirmed the action of the Committee" and "dismiss[ed] the appeal." In its letter decision addressed to defendant's counsel, the DRB explained its determination:

In the appeal, your client claimed that he met one of the three ground rules for appeal specified in R. 1:20A–3(c):

1. A member of the committee hearing the fee dispute failed to disqualify himself/herself in accordance with standards set forth in R. 1:12–1.

2. the committee failed substantially to comply with the procedural requirements of R. 1:20A.

3. there was actual fraud on the part of a member of the committee.

The Board concluded that the District VB Fee Arbitration Committee exercised appropriate jurisdiction over this matter. The rules governing attorneys in New Jersey are broadly applied. In the Board's view, Mr. Pitula is subject to New

Jersey rules governing fee arbitration by virtue of his appearance in the United States District Court for the District of New Jersey.

Thereafter, plaintiff brought this action to confirm the arbitration award and enter judgment "pursuant to" *R.* 1:20A–3(a) and *N.J.S.A.* 2A:24–7.[1] Defendant opposed the application. He asserted the Committee and DRB "did not have the authority to render an arbitration award." He argued that "[b]efore the New Jersey Supreme Court or the Disciplinary Committee may invoke jurisdiction over an attorney, such attorney must be admitted to practice law in the State of New Jersey." Defendant insisted that as he was never "licensed to practice law in New Jersey" the Committee "exceeded [its] powers" and the award had to be "vacate[d]" pursuant to *N.J.S.A.* 2A:24–8(d).

In his affidavit in opposition to the confirmation defendant certified, in part:

8. According to Rule 1:21–1(a), a person is deemed admitted in the State of New Jersey if he holds a "plenary license" to practice in New Jersey or has ever been admitted "pro hac vice."

9. Notwithstanding the fact that I do not hold (and never did hold) a plenary license, nor was I ever admitted "pro hac vice," the Fee Committee erroneously found that they had jurisdiction. This finding was improperly based upon "contacts" with the State rather than the plain language of the statutes and the New Jersey Constitution which grant only limited jurisdiction to the New Jersey Supreme Court in their resolution of fee disputes.

10. On appeal, the Disciplinary Review Board concluded that the Fee Arbitration Committee exercised appropriate jurisdiction. However, in so holding the board noted that I was "subject to New Jersey rules ... by virtue of (my) appearance in the United States District Court for the District of New Jersey." ("Exhibit B") However, I have *never appeared* in the District Court of New Jersey nor any other court in New Jersey and the Board, therefore, erroneously relied on misinformation in reaching its decision.

Defendant also pointed out that the type of investigation involved "would go through the main Immigration and Naturalization Service (INS) in New York; and ... the INS investigators handling

---

[1] *R.* 1:20–3(a)(1) requires a stipulation that if no suit to recover the fees is pending, "the attorney or the client may, by summary action brought pursuant to *R.* 4:67, obtain judgment in the amount of the fee as determined by the Fee Committee in accordance with *N.J.S.A.* 2A:24–1 to *N.J.S.A.* 2A:24–11" regarding arbitration awards.

criminal investigation charges against Plaintiff were assigned to New York" where defendant was licensed to practice and had his offices.

Before rendering his decision the Law Division judge communicated with the DRB because of the dispute concerning whether defendant actually appeared in federal court. Counsel to the DRB subsequently wrote to the judge that

the Board did not intend the word "appearance" ... to reference a technical appearance before the United States District Court for the District of New Jersey. The Board did, however, find that [defendant] specifically represented Susan Lopez in New Jersey, and that his contacts with New Jersey were sufficient to apply the fee arbitration rules.

The Law Division thereafter rejected defendant's arguments and concluded:

when you start to contemplate the purposes of the rule and when you take the facts involved in the within case and apply them towards those purposes, it seems to me quite vividly that the rule definitely intended to cover situations involved here, where we do have an attorney/client relationship existing between an attorney-at-law and a client in the State of New Jersey, involving a specific matter in the State of New Jersey, and where there are numerous contacts between that attorney and that client in the State of New Jersey; including the acceptance and retaining of a fee, and the establishment of a fee, and also including the meeting with third persons, namely U.S. Attorney's Office with respect to that particular matter, that it's hard to suggest that the rule did not contemplate covering this situation, and that the rule must be limited and have a very narrow interpretation to exclude Mr. Pitula.

It seems to me what happened in that case is we would put a premium on wrongdoing; not that Mr. Pitula necessarily did anything wrong, I'm not saying that. But the fact remains he did everything an attorney-at-law in the State of New Jersey would be doing, and yet he wants to be protected from the responsibilities of that relationship because he says he's not involved as an attorney in the State of New Jersey. That's putting a premium on doing something wrong. That if you come into our state and practice law, then you should be authorized; and if you're not authorized, then maybe you're not doing the right thing.

But, in any event, I'm satisfied that the rule should not be treated as narrowly as Mr. Pitula suggests it should. And when a person comes in as an attorney, performs as an attorney, speaks as an attorney, consults as an attorney, gets paid as an attorney, and does everything with respect to this particular matter, that is indicated here; although there may have been other things done in New York, then it satisfies the requirement of the rule. Mr. Pitula is subject to the rule under these circumstances, and as a result, judgment is entered in favor of the plaintiff and against the defendant based on the award of the Arbitration Committee as affirmed by the Disciplinary Review Board.

Defendant now appeals to us from the Law Division's order of December 7, 1992 confirming the award and entering judgment "in favor of plaintiff, Susan Lopez, and against defendant, John L. Pitula, in the amount of Ninety Thousand Dollars ($90,000.00)."

The New Jersey Constitution provides that "[t]he Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted." *N.J. Const.* Art. VI, § 2, ¶ 3. In furtherance of its constitutional responsibility, the Court has established a structure for the discipline of attorneys which includes the creation of District Fee Arbitration Committees. *See R.* 1:20–1(a).

*R.* 1:20A deals with those committees. *R.* 1:20A–3(a) provides for arbitration and permits enforcement by summary action under *R.* 4:67 based on a required stipulation embodied in the request for arbitration form. "The burden of proof shall be on the attorney to prove the reasonableness of the fee in accordance with R.P.C. 1.5 by a preponderance of the evidence." *R.* 1:20A–3(b)(1). Further, "the strict rules of evidence need not be observed." *R.* 1:20A–3(b)(4). There is "[n]o appeal on the merits from the determination of a Fee Committee," but an appeal may be taken to the DRB alleging certain specifics recited in *R.* 1:20A–3(c) which, as that body found, do not apply here. *R.* 1:20A–3(c). If an arbitration award is not paid as determined by the Fee Arbitration Committee or after timely appeal to the DRB, the matter may be referred to the Director of the Office of Attorney Ethics, and the DRB "may recommend to the Supreme Court that the attorney be temporarily suspended until compliance with the determination." *R.* 1:20–4(i). *See also R.* 1:20A–3(e).

We have reservations about whether this court is the proper forum for consideration of the issues raised by defendant in the absence of an endeavor to seek review by the Supreme Court from the DRB determination. *See R.* 1:20–4(f)(3); *R.* 1:20–5(c)(1) (in-

terlocutory review).[2]  However, plaintiff raises no procedural bar to our review, and as the appeal is from a judgment of the Law Division, we proceed to consider the issues raised.  *See N.J. Const.* Art. VI, § 5, ¶ 2;  *R.* 2:2–3(a)(1).

The defendant, in essence, argues that under the strict wording of the State Constitution and the Rules, he is not subject to the Supreme Court's disciplinary power because he has not been "admitted" to the bar of this State, did not make an "appearance" in any "proceeding," and did not "practice" in this State.  The DRB determined that "his appearance" did not have to be in any judicial proceeding in order to convey jurisdiction to the Fee Arbitration Committee, and the Law Division agreed.

We have no doubt that our State Constitution gives the Supreme Court broad authority to discipline attorneys subject only to whatever limitations may be required by the Federal Constitution.  But we need not explore whether Sixth Amendment, due process or other federal constitutional values may limit that power over an attorney admitted in another jurisdiction to counsel a "target" or potential criminal defendant or even meet with the prosecutor in New Jersey, at least when the matter also involves potential proceedings in the State in which the attorney is admitted to practice, *cf. Appell v. Reiner,* 43 *N.J.* 313, 316, 204 *A.*2d 146 (1964) (for purposes of the unauthorized practice of law in New Jersey "recognition must be given to the numerous multi-state transactions arising in modern times"), because we are satisfied that our Supreme Court did not intend to confer Fee Arbitration Committee jurisdiction in these circumstances.[3]

*R.* 1:20–1(a) provides that:

---

[2] *R.* 1:20A–2 provides that "[t]he Fee Committee may further decline to arbitrate disputes ... in which the primary issues in dispute raise substantial legal questions in addition to the basic fee dispute." *R.* 1:20A–2.

[3] In *In re Sackman,* 90 *N.J.* 521, 528–29, 448 *A.*2d 1014 (1982), the Supreme Court amended *R.* 1:21–1(a) to avoid challenges under the privileges and immunities, commerce and due process clauses of the Federal Constitution

> Every attorney *authorized to practice law in the State of New Jersey, including those specially authorized for a limited purpose or in connection with a particular proceeding,* shall be subject to the disciplinary jurisdiction of the Supreme Court as set forth in the Constitution of 1947, Article 6, Section 2, paragraph 3.
>
> To assist in the administration of its disciplinary function, the Supreme Court shall establish in accordance with these rules, ... District Fee Arbitration Committees.... (Emphasis added.)

This rule is carefully tailored to provide for discipline only of attorneys "authorized" to practice law by admission to the bar of this State or by the grant of authority to appear "for a limited purpose" or in a "particular proceeding." Consistent therewith, *R.* 1:21–1(a), which governs the "practice of law" in New Jersey, provides:

> no person shall practice law in this State unless that person is an attorney holding a plenary license to practice in this State, has complied with the *R.* 1:26 skills and methods course requirement in effect on the date of the attorney's admission, is in good standing, and maintains a bona fide office for the practice of law in this State regardless of where the attorney is domiciled....
>
> A person not qualifying to practice pursuant to the first paragraph of this rule shall nonetheless be permitted to appear and prosecute or defend an action in any court of this State if the person (1) is a real party in interest to the action or the guardian of the party; or (2) has been admitted to speak pro hac vice pursuant to *R.* 1:21–2; or (3) is a law student or law graduate practicing within the limits of *R.* 1:21–3.

We are satisfied that the Supreme Court's disciplinary scheme is not intended to extend the jurisdiction of District Fee Arbitration Committees into a dispute which involves an attorney who is neither "authorized" to "practice" here, nor admitted to "appear" in a particular "proceeding" in any forum within the borders of New Jersey. Accordingly, we must agree with defendant's assertion that the Committee did not have jurisdiction in this case and that its award was therefore unenforceable because the arbitrators exceeded the authority conferred upon them by the Supreme Court.

---

because of the then existing requirement that non-domiciliaries maintain their principal offices in New Jersey, while attorneys who lived here merely had to have a "bona fide" office. Our interpretation of the Rules also avoids such issues.

That is not to say that the New Jersey judicial system is powerless to prevent an attorney from improperly practicing in this State without authorization. *See Appell v. Reiner,* 81 *N.J.Super.* 229, 237, 195 *A.*2d 310 (Ch.Div.1963) ("unauthorized practice of law is punishable under the Disorderly Persons Act"), *rev'd,* 43 *N.J.* 313, 204 *A.*2d 146 (1964); *N.J.S.A.* 2A:170–79; *R.* 1:22 (committee on the unauthorized practice of law). *See also In re Waring's Estate,* 47 *N.J.* 367, 375–78, 221 *A.*2d 193 (1966). Nor does it mean that the contacts with this State were not sufficient to convey *in personam* jurisdiction for a civil proceeding in this case designed to obtain a refund of the retainer. As issues addressed to those types of proceedings are not before us in this case, we do not address those remedies further.

The judgment is reversed.