658 A.2d 1321

PAUL J. LINKER AND ROBINSON, ST. JOHN & WAYNE, ESQS., PLAINTIFFS-APPELLANTS, v. THE COMPANY CAR CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 17, 1995—Decided June 12, 1995.

Before Judges KING, D'ANNUNZIO and EICHEN.

*Paul J. Linker* argued the cause for appellant (*Robinson, St. John & Wayne,* attorneys; *Mr. Linker* and *Bryant K. Aaron,* on the brief).

*Michael T. Stewart* argued the cause for respondent (*Foyen & Partners,* attorneys; *Mr. Stewart* and *Eric Hess,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

## I.

We granted leave to appeal to examine a Law Division ruling remanding this matter to the District Fee Arbitration Committee. *See R.* 1:20A–1 to –6. We conclude that the Law Division judge had no jurisdiction to review the decision of the Fee Committee's arbitration panel and reverse that order. We also conclude that transfer to the Disciplinary Review Board (DRB) is the proper procedural course at this juncture. *See R.* 1:13–4(a) and (b).

## II.

Natan Atzbi, Jack Gross and David Derhi were partners in a small corporation, The Company Car, which provided limousine and radio car transportation. The Company Car is a New York corporation with most of its work in Brooklyn. Atzbi had disagreements with his two partners, Jack Gross and David Derhi. When the disagreements could not be resolved, Atzbi agreed to buy out his partners. Because Atzbi did not pay his former partners, Gross and Derhi sought to take the company back. They filed a complaint and order to show cause in Monmouth County, Chancery Division on April 28, 1992. Jerome Kowalski, a New York attorney, then referred Atzbi to Paul Linker of Robinson, St. John & Wayne (Robinson), New Jersey counsel. Linker remarked in a September 22, 1992 letter to Atzbi, "I was contacted by Jerry less than two hours before the initial court hearing in Freehold and asked to represent your interests and The Company Car's." Linker met with Atzbi on April 28, 1992 and agreed to represent him. Linker told Atzbi to deliver a check for a $7,500 retainer by May 4, 1992. Linker also attended a document inspection on behalf of The Company Car on May 1, 1992 in New York City.

On May 6, 1992 Linker sent a letter to Atzbi discussing fees and billing rates and again requested $7,500 as a retainer. Atzbi allegedly assured the firm that the $7,500 would be paid. On May

8, 1992 Linker filed a cross-motion on behalf of The Company Car in the Monmouth County action to (i) transfer the action to the Law Division; (ii) stay the action pending the final outcome of a New York litigation involving the ownership of The Company Car stock; (iii) discharge and vacate the restraints; and (iv) dismiss Atzbi from the First Count of the Complaint and dismiss the Third and Fourth Counts of the Complaint. Linker appeared on behalf of The Company Car before Judge McGann in Monmouth County on May 13, 1992 on the order to show cause.

Linker sent a letter on May 18, 1992 to Atzbi with a transcript of the judge's relatively unfavorable decision, again requesting the $7,500 retainer. On June 2, 1992 Linker wrote to Jerome Kowalski telling him that the firm had obtained an extension of time until June 13, 1992 to file an answer to the complaint. Linker also told Kowalski that if Atzbi did not pay the retainer, the firm would withdraw from the case. Linker wrote to Kowalski on June 17, 1992 telling him that the judge denied his motions, that he obtained an extension through June 30, 1992 to file an answer, and again that Atzbi still had not paid the retainer.

Linker and his firm withdrew from the representation of Atzbi and The Company Car on about July 31, 1992. Linker sent an itemized bill for legal services to Atzbi and The Company Car on September 22, 1992. Atzbi eventually settled his differences with Gross and Derhi; Atzbi and Gross are now partners in the operation of the corporation.

On April 1, 1993 plaintiffs Linker and Robinson sent another letter to The Company Car requesting payment of their legal fees totalling $24,756.35. The letter also advised defendant that it had "the option to pursue this matter by way of filing a request for a fee arbitration proceeding with the local Fee Arbitration Committee." On April 14, 1993 the Fee Arbitration Committee sent The Company Car the standard documents on fee arbitration.

The fee arbitration brochure discussed the format of the hearings and described the obligation of the client to

contact all witnesses you will rely on and to insure their appearance at the hearing. If the witness is important and will not appear voluntarily, you may ask the fee secretary to issue a subpoena. You may also compel the production of documents through subpoenas.

The Company Car claims in its brief that "[r]epresentations were made to John Gross, the president of The Company Car, by the Fee Arbitration Committee that the committee could subpoena witnesses critical to presenting a defense to the ... fees ..." The Company Car apparently is referring to the statements made in the fee arbitration brochure sent by the Fee Arbitration Committee on April 14, 1993. There are no references to oral representations to Gross or his company.

Gross filed for fee arbitration on April 20, 1993. On the fee arbitration form he said that he disagreed with Robinson's bill because

a) We never hired them. Our N.Y. Lawyer sent me to him to handle this.

b) "never" discussed price or retainer.

c) Said case was simple would "squash" plaintiff. Case was "guarantee."

d) After case was lost asked for $7,500 retainer then ... later sent $24,000 bill.

e) did same work 2x due to inferior work originally!

Robinson was served with a copy of the fee arbitration request on May 18, 1993. Under the rules, an attorney must file a response within twenty days. Linker obtained an extension until June 21, 1993 to file his response. The Company Car claimed that Linker filed the response after the deadline. The attorney's response is dated June 28, 1993. The arbitration panel found that Robinson's response was filed "if not on the precise date it was supposed to be, very possibly twenty-four hours later at best." The arbitrators found that the attorney response was "detailed and voluminous." Because the answer was filed a year before the arbitration hearing, the arbitrators concluded that both sides had enough time to prepare for the hearing.

The Company Car received notice on March 1, 1994 that the fee arbitration hearing was scheduled for March 15, 1994. John Gross, as president of The Company Car, then contacted the District V–B Fee Arbitration Committee, requesting that subpoe-

nas be issued to two New York attorneys. Gross was told that the Fee Arbitration Committee could not subpoena witnesses located outside the State of New Jersey. Gross also said that he was told that he had to appear at the fee arbitration hearing or an award would be entered against him. At the motion hearing before Judge Weeks, Gross claimed that the brochure indicated he could subpoena out-of-state witnesses and that he was surprised when the panel told him that they did not have the power to subpoena such witnesses. Gross told the arbitration panel "that's not what you told me when you mailed it to me out of state originally. You didn't tell me that New York was different. I'm a layman."

The arbitration hearing was conducted as scheduled with the District Fee Arbitration Committee V–B on March 15, 1994. The three members on the arbitration panel were Michael D'Alessio, Jr., Esq., Laurie Fierro, Esq., and Sandra Haimoff, lay member. At the beginning of the fee arbitration hearing, Chairman D'Alessio advised Gross that at the end of the proceeding the record would be left open for a period of time for receipt and consideration of any written submissions from the out-of-state witnesses which he wanted to submit. Gross did not submit any statements from the out-of-state witnesses at any time. Gross claimed at the motion before the Law Division judge that he tried to get affidavits before the hearing from the attorneys.

> So I went back to them and I said, well give me an affidavit, and you know, I get this incredulous look like, I'm not coming to testify against another lawyer if I don't have to come to testify against another lawyer.

Gross claimed that the attorneys would not sign the affidavit, and thus he had no statements to offer against Robinson at the hearing. Gross appeared *pro se* at the Law Division motion.

At the arbitration hearing The Company Car did present several witnesses. Gross testified on behalf of The Company Car about the claimed poor quality of Linker's representation. Gross had never been Linker's client. He was the adversary. Atzbi also testified before the hearing panel. After the hearing concluded, Gross was given from March 15, 1994 to March 28, 1994 to submit

statements from out-of-state witnesses. As noted, he produced none.

The panel found that The Company Car owed Linker and the Robinson firm $24,756.35. The District V–B Fee Committee sent its determination and opinion to The Company Car on April 11, 1994. The cover letter gave notice to The Company Car that it could take an appeal on very limited grounds [1] by writing to the DRB in thirty days. Gross then requested appeal forms on behalf of The Company Car. Gross received a letter on May 16, 1994 from the DRB with appeal forms, allowing him thirty days to complete and return them.

On June 1, 1994 Robinson filed a "verified complaint for summary action to enforce fee arbitration," *see R.* 4:67–2, in the Law Division, Essex County, and obtained an order to show cause seeking judgment for the fee awarded by the committee. No papers were submitted in opposition to the order to show cause.

Gross sent a letter as an "appeal" to the DRB, allegedly by certified mail, on June 10, 1994 claiming that the Arbitration Fee Committee did not comply with procedural requirements, specifically it misled the client about the committee's subpoena power. Gross claimed at the Law Division hearing that he sent a copy of this letter to Robinson on the same day, but allegedly could show no proof of service on Robinson. The DRB has never, to our

---

[1] The letter stated in pertinent part:

Enclosed is the Committee's Arbitration Determination in the above matter, which sets forth a monetary synopsis of the decision in your case. As noted in your initial Request Form neither you nor the attorney has any right to appeal the merits of this case. Only a very limited type of appeal may be taken and then only where either the attorney or the client can prove:

1) Any member of the Fee Committee hearing the fee dispute failed to properly disqualify themselves, or

2) The Fee Committee failed substantially to comply with the procedural requirements governing Fee Arbitration matters, or,

3) There was actual fraud on the part of any member of the Fee Committee.

knowledge, acted in response to Gross' "appeal" letter, presumably because of the pending law suit.

On July 21, 1994 Gross appeared *pro se* at the order to show cause argument and hearing in the Superior Court, Law Division, Essex County. On August 15, 1994 the judge ordered the award of the Arbitration Fee Committee vacated and remanded the matter to the same hearing panel which previously heard the case. The judge ordered that

> the Company Car shall obtain forthwith New Jersey counsel to represent it in New Jersey and that such counsel shall take all steps necessary, including if necessary retaining out of state counsel, to insure that the Company Car can compel the attendance at the hearing before the Committee of all out of state of witnesses ...

On August 22, 1994 the judge also ordered:

> ... that the Committee shall convene a hearing on this matter as expeditiously as possible; provided, however, that defendant shall be granted a reasonable time period to conduct such discovery as necessary.... [T]his Court shall retain jurisdiction for purposes of obtaining such discovery as is reasonably necessary.

Michael D'Alessio, Jr., the Chairman of the Fee Arbitration Committee's panel, received the judge's order of August 15, 1994 and wrote to Linker that

> ... I do not have jurisdiction to rehear this matter unless I am so ordered by the Disciplinary Review Board. The specific procedure for filing an appeal with the DRB is set forth in the Rules and I am certain that I cannot rehear a matter unless the DRB so orders.
>
> It appears from the Rules, and it has always been my understanding as Chairman of the District VC Fee Arbitration Committee that Superior Courts do not have jurisdiction in these matters, and frankly I do not feel it appropriate to conduct a hearing that I do not believe I have jurisdiction to conduct.

D'Alessio recommended that Linker "appeal [the Law Division judge's] Order or seek the guidance of the DRB in seeking a rehearing since [D'Alessio was] without jurisdiction to conduct a hearing at this time."

Linker then wrote to the DRB on August 29, 1994. The DRB replied to Linker on September 28, 1994, suggesting that he file a motion for leave to appeal seeking to vacate the judge's order and to reinstate the fee arbitration award. Linker then filed this motion for leave to appeal *nunc pro tunc* which we granted on November 23, 1994.

### III.

The only provision for appeals from awards made by fee arbitration committees is contained in *R.* 1:20A–3(c). Under subsection (c) there is generally *no* appeal on the merits from the determination of a Fee Committee. An appeal may be taken by the client or the attorney to the DRB on four grounds: (1) failure of a member to disqualify per *R.* 1:12–1, (2) failure to comply with the procedural requirements of *R.* 1:20A, (3) actual fraud by a member of the committee, and (4) palpable mistake of law by the committee. The last ground was added (adopted January 31, 1995; effective March 1, 1995) to conform to the Supreme Court's decision on the scope of review of arbitration awards in *Perini Corp. v. Greate Bay Hotel & Casino Inc.,* 129 *N.J.* 479, 610 *A.*2d 364 (1992).

We agree with appellants Linker and Robinson that the rules do not permit any review on the merits of the award, and certainly not in the law courts. *See In re LiVolsi,* 85 *N.J.* 576, 428 *A.*2d 1268 (1981). A party dissatisfied with an arbitration award may appeal a procedural error per *R.* 1:20A–3(c) "in order to protect them from any egregious procedural deprivation before a Committee." *In re LiVolsi,* 85 *N.J.* at 603, 428 *A.*2d 1268. Review of the DRB's decision is by the Supreme Court only. *R.* 1:20–16(g) (formerly *R.* 1:20–5(e)).

The Supreme Court has recently revised and amended the "Jurisdiction" rule, *R.* 1:20A–2, of the Fee Arbitration Committee. The current rule, effective March 1, 1995, now states:

1:20A–2. *Jurisdiction*

(a) *Generally.* Each Fee Committee shall, pursuant to these rules, have jurisdiction to arbitrate fee disputes between clients and attorneys. Fee Committees shall also have jurisdiction to arbitrate disputes in which a person other than the client is legally bound to pay for the legal services, except that Fee Committees shall not have jurisdiction of such cases if the obligation arises out of the settlement of a legal action. A fee arbitration determination is final and binding upon the parties except as provided by *R.* 1:20A–3(c).

(b) *Discretionary Jurisdiction.* A Fee Committee may, in its discretion, decline to arbitrate fee disputes:

(1) involving a matter in which no attorney's services have been rendered for at least two years;

(2) in which persons who are not parties to the arbitration have an interest that would be substantially affected by the arbitration;

(3) in which the primary issues in dispute raise substantial legal questions in addition to the basic fee dispute;

(4) in which the total fee charged exceeds $100,000, excluding out-of-pocket costs and disbursements.

(c) *Absence of Jurisdiction.* A Fee Committee shall not have jurisdiction to decide:

(1) a fee which is allowed or allowable as of right by a court or agency pursuant to any applicable rule or statute.

(2) claims for monetary damages resulting from legal malpractice, although a fee committee may consider the quality of services rendered in assessing the reasonableness of the fee pursuant to RPC 1.5.

(A) Submission of a matter to fee arbitration shall not bar the client from filing an action in a court of competent jurisdiction for legal malpractice.

(B) No submission, testimony, decision or settlement made in connection with a fee arbitration proceeding shall be admissible evidence in a legal malpractice action.

(d) *Procedure for Determining Jurisdiction.* All questions of jurisdiction shall be resolved initially by the secretary or, if a hearing panel has already been appointed, by the panel chair.

The pertinent part of the accompanying "comment" to the revised rule states:

*R.* 1:20A–2 has been rewritten for clarity. Paragraph (a) states the general jurisdictional powers of fee committees. In addition, the rule now makes clear that the decision of the fee arbitration committee is final and binding on the parties, and that, pursuant to *R.* 1:20A–3(c), the Board, alone, has appellate jurisdiction in these matters.

Paragraph (a) states initially the general rule that only fee disputes between clients and attorneys are subject to arbitration, with the exception of third-party legal matters where one other than the lawyer's client is legally responsible to pay the legal fee.

For example, in the matter of *Paul Linker et al. v. The Car Corp.,* Sup. Court Law Div. Essex Co. Docket No. L–8394–94, decided Aug. 15, 1994, the attorney filed a summary action pursuant *R.* 4:67 to reduce a fee determination to judgment. The client, who elected not to appeal the fee arbitration determination to the Disciplinary Review Board, raised its procedural defenses for the first time in the Superior Court enforcement action. The trial court permitted said collateral attack and remanded the matter back to the fee arbitration panel to conduct a new hearing. Such collateral challenges to fee determinations would be prohibited by the rule change.

The rule as previously cast was unclear on handling objections to the Fee Committee's jurisdiction.[2]  *See Lopez v. Pitula,* 271 *N.J.Super.* 116, 122–23, 638 *A.*2d 155 (App.Div.1994).

The Law Division judge had no power to review the panel's award in any respect under this administrative scheme.  We vacate the Law Division orders of July 21 and August 22, 1994 which remanded this matter to the fee arbitration panel.

The parties sharply dispute whether Gross' letter to the DRB on June 10, 1994 on behalf of The Company Car constituted a timely and proper administrative appeal of the fee panel's award in Robinson's favor.  This dispute must be resolved by the DRB; if it decides there is a viable pending appeal, the DRB can hear the appeal promptly.  If the DRB decides there is no viable appeal, the Robinson firm can proceed in the Law Division in its action to reduce the award to judgment.

We transfer this matter to the DRB for resolution of the right of The Company Car to appeal the panel's award.  *See R.* 1:13–4(a) and (b).  The pending Law Division action shall be held in an inactive status pending final resolution of the administrative proceedings.  *See R.* 1:13–7(a).

[2] The "jurisdiction" rule, *R.* 1:20A–2, previously said:

Each Fee Committee shall, pursuant to these rules, have jurisdiction (a) to arbitrate fee disputes and (b) to take initial proceedings with respect to grievances alleging overreaching in accordance with *R.* 1:20A–4.  A Fee Committee may, in its discretion, decline to arbitrate fee disputes in respect of a matter as to which no attorney's services have been rendered for at least two years.  When the fee in question is allowed or allowable as of right by a court or agency pursuant to any applicable rule or statute, the Fee Committee shall have no jurisdiction.  The Fee Committee may further decline to arbitrate disputes in which persons who are not parties to the arbitration have an interest that would be substantially affected by the arbitration or in which the primary issues in dispute raise substantial legal questions in addition to the basic fee dispute.

Fee Committees shall have jurisdiction to arbitrate third-party legal matters where the lawyer is retained by one other than the client but where the client is specifically legal action agrees to pay for the legal fees of another.

The Law Division orders are reversed; the matter is transferred to the Disciplinary Review Board.